**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **3NOD DIGITAL (HONG KONG) LIMITED,**<br><br>   **Plaintiff,**<br><br>       **v.**<br><br>**UNITED STATES DEPARTMENT OF STATE,** *et al.*,<br><br>   **Defendants.** | **Civil Action No. 25-968 (JEB)** |

**MEMORANDUM OPINION**

Plaintiff 3Nod Digital (Hong Kong) Limited sells speakers, headphones, and other electronics.  A series of shipments to a Russian corporation in 2023 landed the company in hot water with the State Department's Office of Economic Sanctions Policy and Implementation (OESPI), which recommended that 3Nod be sanctioned for engaging with the technology sector of the Russian Federation.  The Secretary of State agreed and placed Plaintiff on the Specially Designated Nationals and Blocked Persons List (SDN List), barring the company from conducting any business in the United States.  In protest of its designation, 3Nod filed a delisting petition seeking removal from the SDN List, which OESPI rejected.  Plaintiff then filed this suit against the State Department, OESPI, and the Treasury Department's Office of Foreign Assets Control (OFAC), contending that OESPI both unlawfully designated the company for sanctions and unlawfully denied its delisting petition in violation of the Administrative Procedure Act.  Each side has now filed a Cross-Motion for Summary Judgment.  The Court concludes that while the initial designation was lawful, OESPI lacked the authority to decide Plaintiff's delisting

1

request and that decision must therefore be set aside.  It will accordingly grant both Motions in part and deny them in part.

## I.    Background

### A.    Statutory and Regulatory Scheme

Since our nation's infancy, many of its leaders have viewed economic sanctions as "the most likely means of obtaining our objects without war."  James Madison, "Political Observations," National Archives (Apr. 20, 1795).  Consistent with this tradition, in 1977, amidst the Cold War, Congress passed the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq.*, which grants the President broad discretion to impose economic sanctions on foreign entities and individuals in the event of an "unusual and extraordinary threat."  Fulmen Co. v. OFAC, 547 F. Supp. 3d 13, 25 (D.D.C. 2020) (citing 50 U.S.C. § 1701).  The President may declare such a national emergency when that threat "originates in substantial part in a foreign state."  Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 159 (D.C. Cir. 2003).

In 2021, President Biden invoked IEEPA to issue Executive Order 14024, "declar[ing] a national emergency to deal with" the threat posed by "harmful foreign activities of the Government of the Russian Federation."  Exec. Order No. 14024, 86 Fed. Reg. 20249 (Apr. 15, 2021).  The Order authorizes the Secretary of the Treasury, in consultation with the Secretary of State, to formally designate persons or companies determined "to operate or have operated in . . . any . . . sector of the Russian Federation economy" in order to "block[]" their "property and interests in property" in the United States.  Id., § 1.  Executive Order 14024 also authorizes the Secretary of the Treasury to "take such actions, including the promulgation of rules and regulations, . . . as may be necessary to carry out the purposes of [the Order]."  Id., § 8.  The

Secretary of the Treasury has since delegated his implementation authority to OFAC.  See 31

C.F.R. § 587.802.  This chain of delegation, from President to Secretary of the Treasury to

OFAC, is common under executive orders issued pursuant to IEEPA.  E.g., Goetz v. Palluconi,

775 F. Supp. 3d 189, 194–95 (D.D.C. 2025) (explaining delegation under Executive Order

13413); Rakhimov v. Gacki, 2020 WL 1911561, at *1 (D.D.C. Apr. 20, 2020) (explaining

delegation under Executive Order 13581).  In addition, Executive Order 14024 authorizes "the

Secretary of State, in consultation with the Secretary of the Treasury," to designate foreign

persons and companies for sanctions.  See Exec. Order No. 14024, § 1(a).  Designations under

Executive Order 14024 can thus come from either OFAC or the Secretary of State.  In making

his decisions, the Secretary of State appears to, at times, rely on recommendations made by

OESPI.  See ECF No. 24 (Administrative Record) at JA 806.

When a company is designated under executive orders like 14024, it is added to the SDN

List, and "all [its] assets in the United States or under the control of any person who is in the

United States are blocked, or effectively frozen."  Zevallos v. Obama, 793 F.3d 106, 110 (D.C.

Cir. 2015) (cleaned up).  A designee may seek "administrative reconsideration" of its designation

by filing a delisting petition and rebutting the "basis . . . for the sanction."  31 C.F.R. § 501.807.

Since many executive orders under IEEPA have channeled sanction-designation powers

to OFAC, the Treasury Department has established a general process for how OFAC considers

delisting requests, which is then incorporated into the specific regulations for each order.  Id.,

§ 501.807(b)(3).  Relevant here, these general regulations have been incorporated into OFAC's

specific regulations for Executive Order 14024.  Id., § 587.101.  The State Department,

conversely, has no existing regulations on designations or delisting requests.  On State's

website, a guidance document states that "[i]n those instances where the Department of State . . .

designated the person requesting delisting, the Department of State will also be the Adjudicating Agency" for the delisting petition.  See Division for Counter Threat Finance and Sanctions, Learn More About the Department of State's Delisting Process, U.S. Dep't of State, https://www.state.gov/sanctions-delisting (last visited Mar. 9, 2026).  It is worth noting that the State guidance cites OFAC's delisting regulations and appears to have adopted those standards for its own consideration of petitions.  Id. ("Petitioners must establish that delisting is appropriate, consistent with OFAC's regulations.").  The guidance also states that even if the State Department is the ultimate decisionmaker on a delisting petition, all petitions should still be first sent to OFAC, which then refers the petition to State.  Id.

If the Government "denies a request for reconsideration, the blocked [entity] may challenge that determination under the APA" in federal court, Sulemane v. Mnuchin, 2019 WL 77428, at *2 (D.D.C. Jan. 2, 2019), but need not necessarily do so, as "[a] designated [entity] can request delisting as many times as [it] likes." Zevallos, 793 F.3d at 110.  In some instances, parties may even challenge the agency's designation in court while the delisting petition is still pending.  See, e.g., Fares v. Smith, 901 F.3d 315, 317, 320 (D.C. Cir. 2018); Zevallos, 793 F.3d at 111; Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury, 686 F.3d 965, 974 (9th Cir. 2012).

B.     Factual and Procedural Background

In 2023, 3Nod made shipments of smart speakers, power adapters, and other goods to a Russian technology company.  See Admin. R. at JA 3–5, 341–42.  The shipment contained items included on the Bureau of Industry and Security's Common High Priority List (CHPL), which details 50 exports that the Bureau believes could be used to aid Russian war efforts.  Id. at JA 2.  In particular, the shipments were labeled as containing two kinds of CHPL items: 3Nod's smart

speakers were labeled as HS Code 8517.62, which covers "[m]achines for the reception, conversion and transmission or regeneration of voice, images, or other data," and its power adapters were labeled as HS Code 8504.40, which covers "[e]lectronic transformers, static convertors . . . and inductors." Id. at JA 3.

Based on those shipments, OESPI drafted a recommendation for the Secretary of State asserting that there was "reason to believe" that 3Nod operates or has operated in the Russian Federation technology sector and advising the Secretary to designate Plaintiff as an SDN. Id. at JA 1. The Secretary approved the recommendation on June 9, 2024. Id. at JA 806, JA 813. Three days later, the State Department publicly announced that it had designated 3Nod as an SDN pursuant to Executive Order 14024. Id. at JA 178, 180.

Facing what it described as "civil death, in terms of the ruinous economic and personal consequences," ECF No. 17-1 (Pl. MSJ) at 4, Plaintiff submitted a delisting petition to OFAC and OESPI on July 31, 2024. See Admin. R. at JA 338. It argued that its smart speakers had been misclassified as HS Code 8517.62 ("[m]achines for the reception, conversion and transmission or regeneration of voice, images, or other data") and were in fact supposed to be classified as HS Code 8518.22 ("[m]ultiple loudspeakers, mounted in the same enclosure"), which is not on the CHPL. Id. at JA 344. Plaintiff did not contest the classification of its power adapters under HS Code 8504.40 but argued that they could not actually be used for any war purposes. Id. at JA 346. 3Nod also argued that it had instituted new sanctions-compliance policies, and therefore the circumstances had sufficiently changed to justify delisting. Id. at JA 349. Over the next few months, the two sides exchanged additional communications regarding Plaintiff's arguments and compliance policies. Id. at JA 490–94, JA 495–504, JA 660–62, JA 675–77.

On August 21, 2025, the OESPI Director denied 3Nod's delisting petition. Id. at JA 815. In an evidentiary memorandum, the Office concluded that even if the smart speakers had been misclassified as CHPL items, Plaintiff had still shipped CHPL-classified power adapters to a Russian company and those shipments sufficiently justified the company's designation. Id. at JA 165, JA 815. OESPI acknowledged that 3Nod had instituted a new compliance program to avoid running further afoul of U.S sanctions laws. Id. at JA 166–67. It concluded, however, that the compliance program had been in place for just a short while, so OESPI could not yet assess the efficacy of those new measures. Id. at JA 168–69, JA 816.

While awaiting the reconsideration decision, Plaintiff filed this lawsuit in April 2025, arguing that the State Department had unreasonably delayed deciding its petition. See ECF No. 1 (Compl.), ¶¶ 38–42. After OESPI's August decision, 3Nod amended its Complaint to challenge both the State Department's initial designation as well as its denial of Plaintiff's delisting petition on several grounds. See ECF No. 13 (Am. Compl.), ¶¶ 75–95. Both sides have now moved for summary judgment. See Pl. MSJ; ECF No. 20 (Gov. MSJ).

## II.    Legal Standard

Although styled as Cross-Motions for Summary Judgment, the submissions in this case seek the Court's review of two administrative decisions. In such a case, "summary judgment is the mechanism for deciding whether as a matter of law an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." Louisiana v. Salazar, 170 F. Supp. 3d 75, 83 (D.D.C. 2016). The district court therefore "sits as an appellate tribunal," Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quotation marks omitted), meaning that its analysis is confined to the administrative record, CTS Corp. v. EPA, 759 F.3d 52, 64 (D.C. Cir. 2014), and the APA "sets forth the full extent of judicial authority to

review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or undertaken "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2).

### III.   Analysis

Plaintiff seeks APA judicial review for both its initial designation and the denial of its delisting petition, alleging that each was unlawful for a variety of reasons. The Court considers the two actions separately.

#### A.   Initial Designation

The company lodges two objections to its 2024 designation. First, it asserts that OESPI did not have the authority to designate SDNs. See Pl. MSJ at 19–21. Second, it maintains that OESPI officials acted in contravention of the Appointments Clause by exercising significant authority reserved for appointed officers of the United States. Id. at 22–26.

The Court need not reach either argument because, as the Government points out, OESPI did not designate Plaintiff — the Secretary of State did. See Gov. MSJ at 13. The administrative record indicates that OESPI submitted an evidentiary memorandum recommending 3Nod's designation to the Secretary of State, which he then approved. See Admin. R. at JA 806. Executive Order 14024 undoubtedly authorizes the Secretary of State to designate SDNs. See Exec. Order No. 14024, § 1(a). Nor is it an issue that the Secretary relied on OESPI to take the first pass at the designation. Nat'l Small Shipments Traffic Conf., Inc. v. ICC, 725 F.2d 1442, 1450 (D.C. Cir. 1984) (agency head "may delegate detailed consideration of the administrative record to [his] subordinates while retaining the final power of decision for [him]self"). And to

the extent that an SDN designation needs to be made by a duly appointed officer of the United States, the Secretary of State would certainly qualify. The Court will therefore decline to disturb the Secretary's initial designation on these grounds.

B.      Delisting Denial

The company next challenges OESPI's denial of its delisting petition. As with the initial designation, Plaintiff contends that OESPI lacked delegated authority to decide that petition and that its decision violated the Appointments Clause. See Pl. MSJ at 26–32. Because the Court will set aside the delisting denial on the former ground, it need not consider the latter or Plaintiff's additional three challenges: 1) Executive Order 14024 does not permit sanctions for past conduct; 2) OESPI applied the wrong standard in considering 3Nod's delisting request; and 3) OESPI failed to consider evidence that Plaintiff had ceased all operations in Russia. Id. at 32–41.

The company posits that OESPI lacked the authority to deny its delisting request because the power to decide such petitions is vested solely in the Treasury Department — namely, in OFAC — and OFAC cannot delegate that power to State or to OESPI, an office in a different agency. Id. at 26–27. The Government concedes that OESPI decided the delisting petition, see Gov. MSJ at 10, but maintains that because the State Department had the power to issue the initial designation, it also retained the power to reconsider that decision. Id. at 14–15. The Court agrees — and disagrees — in part with both sides.

Start with Plaintiff's assertion that only OFAC may consider delisting petitions. 3Nod argues that because 31 C.F.R. § 501.807 details how OFAC will decide reconsideration requests, OFAC is the only office that may decide those petitions. See Pl. MSJ at 28. This argument is unconvincing. Executive Order 14024 delegated designation authority to the Secretaries of both

8

the Treasury and State.  See Exec. Order No. 14024, § 1(a).  Absent statutory language indicating otherwise, the power to reconsider attaches to the power to consider, so imbuing the Secretaries with designation authority inherently grants each of them the ability to consider delisting requests.  Albertson v. FCC, 182 F.2d 397, 399 (D.C. Cir. 1950) ("The power to reconsider is inherent in the power to decide.").  The mere fact that Treasury maintains regulations for how it handles delisting petitions does not automatically remove that same power from the Secretary of State.  Nor do the OFAC regulations state anywhere that its power to consider delisting petitions is exclusive.  See 31 C.F.R. § 501.807.  It would be a strange result for this Court to conclude that the Secretary of State cannot reconsider his own designations, and stranger still to derive that conclusion by implication from another department's internal regulations.

The Court will thus not read OFAC's regulations to impose a limit on another agency head's powers, especially when Executive Order 14024 clearly contemplates and encourages coordination between State and Treasury.  Cf. Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 249 (D.C. Cir. 2014) ("[W]e will not . . . read into this statute an implicit congressional intent to restrict consultation and coordination between two executive agencies.").  Here, because the Secretary of State designated 3Nod, he may also consider 3Nod's delisting petition.

The issue with this delisting decision, however, is that it was not made by the Secretary of State.  Instead, OESPI issued the final decision to deny, and that denial was never reviewed or ratified by the Secretary.  See Admin. R. at JA 815.

In general, agencies retain broad discretion over their internal processes, and subdelegations to subordinate offices are "presumptively permissible."  U.S. Telecom Ass'n v. FCC, 359 F.3d 554, 565 (D.C. Cir. 2004).  But "[a] necessary corollary to this principle is that

the particular official acting on behalf of the agency must have been delegated the authority to act." Am. Vanguard Corp. v. Jackson, 803 F. Supp. 2d 8, 12 (D.D.C. 2011); see also Service v. Dulles, 354 U.S. 363, 387 n.40 (1957) ("No doubt the Secretary could delegate that duty. But nothing of the kind appears to have been done here."); Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 810 (D.C. Cir. 2006); Nat'l Inst. of Mil. Just. v. U.S. Dep't of Def., 404 F. Supp. 2d 325, 337 (D.D.C. 2005) ("Even if [Secretary were authorized] to delegate his authority[,] . . . the defendant has not directed this Court to any regulation where such a designation has been made, nor could this Court find any."), aff'd, 512 F.3d 677 (D.C. Cir. 2008). This constraint on agencies is not stringent: delegations need not be done through formal regulations or processes, and even internal documents will suffice. Gentiva Healthcare Corp. v. Sebelius, 857 F. Supp. 2d 1, 13 (D.D.C. 2012), aff'd, 723 F.3d 292 (D.C. Cir. 2013); C & W Fish Co. v. Fox, 931 F.2d 1556, 1558 (D.C. Cir. 1991); League of Women Voters of U.S. v. Newby, 238 F. Supp. 3d 6, 11–13 (D.D.C. 2017). At a minimum, however, a delegation must actually have been made to ensure that reviewing courts and regulated entities can identify a decisionmaker and hold agencies to their own delegation decisions. Cf. Am. Vanguard Corp., 803 F. Supp. 2d at 13–14 ("[W]here an agency official delegates authority to a subordinate, the official binds himself by such delegation and may not exercise such powers absent express retention of them.").

In this case, there is simply no record evidence that the Secretary ever delegated his powers to OESPI. No regulations exist to that effect, and the primary documentation detailing how the State Department handles delisting petitions speaks in broad terms about the Department without mention of OESPI. Learn More About the Department of State's Delisting Process. Indeed, the Government does not ever argue that the Secretary had delegated his powers to

10

OESPI.  See Gov. MSJ at 14–15.  As Plaintiff rightfully points out, see Pl. MSJ at 28–30, OESPI could not have derived its decisionmaking power from OFAC either; the Secretary of the Treasury's powers may be delegated only within the Department.  U.S. Telecom Ass'n, 359 F.3d at 565 (finding subdelegations to outside parties to be presumptively "improper").  Unable to draw authority from OFAC and lacking a delegation from the Secretary of State, OESPI therefore had no power to decide 3Nod's delisting petition.  Because "a court may uphold agency action only where the record establishes that the official who took such action was authorized to do so," Am. Vanguard Corp., 803 F. Supp. 2d at 12, OESPI's decision on the delisting petition must be set aside as being "not in accordance with law" and "in excess of [its] authority."  5 U.S.C. § 706(2).

The Government nonetheless contends that because IEEPA does not grant any right to file a delisting petition or spell out how those petitions should be handled, the executive branch has discretion to structure the delisting process however it pleases.  See Gov. MSJ at 14; ECF No. 23 (Gov. Reply) at 8–9.  But the issue at hand is not whether Plaintiff had a right to petition for delisting and what consequent say it gets over the delisting process.  It is whether OESPI, a suboffice of the State Department and thus a "creature of statute . . . [with] 'no power to act'" except as authorized, Marin Audubon Soc'y v. Fed. Aviation Admin., 121 F.4th 902, 912 (D.C. Cir. 2024) (quoting FEC v. Ted Cruz for Senate, 596 U.S. 289, 301 (2022)), was ever vested with the power to decide 3Nod's petition.  Here, it was not.

As the Court now vacates OESPI's delisting decision on this basis, it need not reach Plaintiff's remaining arguments.  In addition, it points out that this Opinion should not be read as granting Plaintiff's delisting petition.  On the contrary, it merely vacates the denial of the petition and remands the matter to the relevant agencies for reconsideration by the proper authority.

11

**IV.    Conclusion**

The Court, accordingly, will grant the parties' Motions for Summary Judgment in part and deny both in part.  An Order so stating will issue this day.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 18, 2026